IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON MENDENHALL,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>OUT OF SITE INFRASTRUCTURE, INC., et al.,<br><br>　　　　　Defendants. | CIVIL ACTION<br>NO. 14-4996 |

**OPINION**

**Slomsky, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**August 4, 2017**

### I.　INTRODUCTION

Before the Court are two Motions for Judgment on the Pleadings filed by Out of Site Infrastructure, Inc. ("Out of Site") (Doc. No. 66) and Out of Site Infrastructure Inc., Retirement Plan (the "Plan") (Doc. No. 68) (collectively "Defendants"). Defendants request relief pursuant to Fed. R. Civ. P. 12(c).[1] On August 27, 2014, Plaintiff instituted this action against Defendants Out of Site Infrastructure, Inc., Out of Site Infrastructure Inc., Retirement Plan, John Taddei, and Paul Verna. (Doc. No. 1.) In his Complaint, Plaintiff alleges that all Defendants breached their fiduciary duty to him and to his retirement savings plan by failing to pay money into his account. An Answer to the Complaint was filed on September 23, 2014. (Doc. No. 8.)

During the next two years, the parties exchanged electronic and paper discovery and attempted to settle the case through mediation before Chief Magistrate Judge Emeritus Carol Sandra Moore Wells. At the close of fact discovery and during mediation with Judge Wells, Plaintiff sought to expand the scope of this litigation to include all Plan members. (Doc. No. 66

---

[1] Rule 12(c) states in relevant part: "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).

1

at 3.) As a result, on January 20, 2017, Out of Site Infrastructure, Inc. filed a Motion for Judgment on the Pleadings. (Doc. No. 66.) On January 23, 2017, Out of Site Infrastructure Inc., Retirement Plan requested to join in that Motion. (Doc. No. 68.) On February 21, 2017, Plaintiff responded in opposition to the Motions. (Doc. No. 69.) On February 28, 2017, Defendants replied. (Doc. No. 70.) For reasons that follow, the Court will grant Out of Site Infrastructure, Inc. (Doc. No. 66) and Out of Site Infrastructure Inc., Retirement Plan's (Doc. No. 68) Motions for Judgment on the Pleadings.

## II. BACKGROUND

Plaintiff was employed at Out of Site from May 2010 through May 2013. (Doc. No. 1 at ¶¶ 4-6.) During that time, he participated in Defendants' defined contribution 401(k) plan.[2] (Id.) The Plan was governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). (Id. at ¶ 21-22.) John Taddei was the manager of Out of Site and made decisions regarding employee wages and benefits. (Id. at ¶ 10.) Paul Verna was the trustee of the Plan. (Id. at ¶ 14.)

The Plan required Out of Site to pay twenty-five percent of the employee's prevailing wage compensation into the Plan for each year the employee worked at Out of Site. (Id. at ¶ 32.) Under the Plan, participants did not contribute any money and were 100% vested in the Plan at all times. (Id. at ¶¶ 27-28.) The Plan, however, permitted participants to self-direct the investments in their account. (Id. at ¶¶ 29.)

---

[2] The retirement plan is named Defendant Out of Site Infrastructure, Inc., Retirement Plan. It is a 401(k) plan which is defined as:

> [a] retirement and savings plan that allows an employee to elect to have a portion of his or her pretax salary contributed to a defined-contribution plan. Employers often match all or part of the employee's contributions. Employees can choose investments from a list of options.

Employee Benefit Plan, Black's Law Dictionary (10th ed. 2010) (citing 26 U.S.C. § 401(k) (2012)).

2

Plan assets were managed by Out of Site's Plan Administrator and MandMarblestone Group, LLC.[3] (Id. at ¶ 38.) In his Complaint, Plaintiff alleges that Out of Site did not make any contributions "on behalf of Plaintiff and other Plan participants to their accounts for prevailing wage compensation in 2010, 2011, 2012, and 2013." (Id. at ¶ 33.) Plaintiff does not name or identify the "other Plan participants." (See generally Doc. No. 1.) Plaintiff further alleges that Defendants retained monies that should have been contributed into the Plan on behalf of the employees for their own personal use; did not provide quarterly pension benefit statements to Plaintiff or other Plan participants; and did not have a fiduciary bond[4] in place for the Plan. (Id. at ¶¶ 34-37.)

On August 27, 2014, Plaintiff filed a Complaint alleging in five counts: (I) failure to supply information about the Plan under 29 U.S.C. § 1132(c)(1) against the Plan;[5] (II) breach of fiduciary duty against Out of Site in violation of 29 U.S.C. § 1109(a); (III) breach of fiduciary duty against the Plan in violation of 29 U.S.C. § 1109(a); (IV) breach of fiduciary duty against Paul Verna in violation of 29 U.S.C. § 1109(a); and (V) breach of fiduciary duty against John Taddei in violation of 29 U.S.C. § 1109(a).[6] On September 23, 2014, Out of Site filed an Answer with affirmative defenses. (Doc. No 8.)

---

[3] MandMarblestone Group, LLC is not a party to this action.

[4] A fiduciary bond is defined as: "[a] type of performance bond required of a trustee, administrator, executor, guardian, conservator, or other fiduciary to ensure the proper performance of duties. — Also termed administrator's bond." Fiduciary Bond, Black's Law Dictionary (10th ed. 2010).

[5] The claim in Count I is not pertinent to the current Motions and therefore will not be further discussed.

[6] The claims in Counts IV and V are also not pertinent to the current Motions and will not be discussed.

3

Thereafter, the parties engaged in discovery, but reached an impasse regarding the scope of Plaintiff's discovery requests and numerous notices of depositions. (Doc. No. 66 at 7.) On November 26, 2014, Out of Site and the Plan filed a Motion for [a] Protective Order to prevent Plaintiff from obtaining discovery on other Plan participants. (Doc. No. 17.) On January 12, 2015, a hearing was held and the Court denied Defendant's Motion finding that Plaintiff could discover information relating to all Plan participants. (Doc. No. 25, 26.)

On February 20, 2015, the parties appeared for mediation before Chief Magistrate Judge Carol Sandra Moore Wells. (See generally Doc. No. 31.) Mediation efforts were delayed due to matters involving Out of Site, Paul Verna, and John Taddei's retention of counsel.[7] (Doc. No. 57 at 1.) Ultimately, mediation was unsuccessful. The parties could not agree on settlement terms, or even on whether the litigation should be limited only to the claims of Plaintiff. (Doc. No. 50 at 1.)

On January 6, 2017, a pretrial conference was held to assess the status of the litigation. (Doc. No. 65 at 1.) At the hearing, Out of Site argued that Plaintiff's case should be limited in scope to claims that affect only his individual retirement account. At the hearing, the Court ordered both parties to file motions on this issue.

On January 20, 2017, Out of Site filed its Motion for Judgment on the Pleadings. (Doc. No. 66.) As noted, on January 23, 2017, the Plan joined Out of Site in its Motion. (Doc. No. 68.) Plaintiff responded in opposition to Out of Site and the Retirement Plan's motion. (Doc. No. 69.) Defendants replied to Plaintiff. (Doc. No. 70.) The Motions are now ripe for disposition.

---

[7] Out of Site, Paul Verna, and John Taddei had difficulty paying counsels' required fees. Ultimately on May 20, 2016, their counsel filed a Motion to Withdraw. (Doc. No. 53.) As of the date of this Opinion, Paul Verna and John Taddei are proceeding pro se. (See Doc. No. 60.)

4

## III. STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, a court must consider only those documents contained in the pleadings. See Moco Invs., Inc. v. United States, 362 F. App'x 305, 307 n.4 (3d Cir. 2010) (explaining that the district court's consideration of documents outside the pleadings converted the motion for judgment on the pleadings into a motion for summary judgment).

A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004) (explaining that "there is no material difference in the applicable legal standards" for Rule 12(b)(6) and Rule 12(c) motions). Like a motion to dismiss, under Rule 12(c), "the trial court must view the facts in the pleadings in the light most favorable to plaintiff and must grant the motion only if the moving party establishes that no material issues of fact remains and that it is entitled to judgment as a matter of law." Shelly v. Johns-Manville Corp., 798 F.2d 93, 97 n.4 (3d Cir. 1986); see also Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008). A motion for judgment on the pleadings will only be granted where "the plaintiffs would not be entitled to relief under any set of facts that could be proved." Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 220 (3d Cir. 2001).

## IV. ANALYSIS

The issue before the Court is one of first impression in the Third Circuit. Defendants argue that Plaintiff's claims under ERISA Section 502(a)(2), 29 U.S.C. § 1132, cannot be brought on behalf of the Plan because Plaintiff failed to comply with Federal Rule Civil Procedure 23 ("Rule 23"). Defendants assert that Plaintiff has only pled a claim for individual relief and therefore cannot proceed on behalf of the Plan. (Doc. No. 66 at 2.) Plaintiff claims

5

that he is not required to comply with Rule 23 and that he may proceed on behalf of the Plan. Plaintiff contends that because Section 502(a)(2) allows a litigant to assert claims on behalf of the entire plan or individually, he can move forward with a claim for all Plan members.

Section 502(a)(2) provides that a civil action may be brought "by the Secretary [of Labor], or by a participant, beneficiary or fiduciary for appropriate relief under Section 1109 of this title." 29 U.S.C. § 1132. In relevant part, 29 U.S.C. § 1109(a) provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C. § 1109(a). In cases where a plan participant asserts a Section 502(a)(2) claim against a fiduciary of a defined contribution plan, "participants can assert claims on behalf of the entire plan or on behalf of their individual plan accounts." Stanford v. Foamex L.P., 263 F.R.D. 156, 164 (E.D. Pa. 2009) (citing LaRue v. DeWolff, Boberg & Assocs., 552 U.S. 248, 251 (2008)). If properly pled, any recoupment of lost profits under a Section 502(a)(2) claim "would inure to the benefit of the plan." Id. (citing Mass. Mut. Life Ins. Co. v. Russel, 473 U.S. 134, 140 (1985)). The statutory language, however, does not provide procedural guidelines that a plaintiff must follow in order to bring a claim on behalf of a plan. Further, there is no definitive guidance from the Third Circuit Court of Appeals or the United States Supreme Court regarding claims of this nature.

### A. The Parties' Arguments

Defendants argue that Plaintiff must comply with Rule 23 to maintain this action on behalf of all Plan members. (Doc. No. 66 at 8.) Defendants assert that Plaintiff must comply

6

with the class action procedural safeguards set forth in the Rule because adjudication for the entire Plan also would adjudicate the rights of other absent Plan participants. (Id.) Defendants further claim that "the only proper way to ensure that the rights of . . . third parties would be adequately protected would be for Plaintiff to satisfy the stringent procedural requirements and protections set forth in Rule 23 . . . ." (Id.)

In support of their argument, Defendants rely on the Second Circuit's decision in Coan v. Kaufman, 457 F.3d 250 (2d Cir. 2006). In Coan, a former employee brought suit against plan fiduciaries individually and on behalf of the employer's 401(k) plan under Section 502(a)(2) of ERISA. Id. at 254. The Second Circuit began its analysis by noting that ERISA does not specify the procedures that a plan participant must follow when bringing a claim in a representative capacity. Id. at 259. The Second Circuit further noted that prior to enactment of Section 502(a)(2), the United States House of Representatives and United States Senate's version of the bill differed with respect to procedural safeguards for representative actions. Id. at 259-60. The Senate's bill provided that a participant may satisfy Rule 23, while the House's bill provided that a participant must satisfy Rule 23. Id. Ultimately, neither requirement appears in the final version of Section 502(a)(2). Id.

The Second Circuit opined that the lack of procedural requirements in the final bill did not mean that a participant could bring a suit on behalf of an employee benefit plan "without observing any procedural safeguards for other interested parties." Id. Analogizing to the common law of trusts, the Second Circuit held that Congress intended to leave the "procedures necessary to protect absent parties, and to prevent redundant suits, to . . . [the] parties and judges according to the circumstances on a case by case basis." Id. The court held that a plaintiff need not always comply with Rule 23 to bring suit in a representative capacity, but must take adequate

7

steps under the circumstances to properly act in a representative capacity. Id. at 261. The court further noted that this duty may be discharged if "a plan participant joins or makes a good-faith effort to join other participants as parties pursuant to Rule 19 . . . ." Id. Affirming the district court's grant of the defendant's motion for summary judgment, the Second Circuit stated that "[a]llowing [the plaintiff] to bring this action without notifying or otherwise involving other plan participants would, it seems to us, create significant practical difficulties and opportunities." Id. Additionally, the Court of Appeals stated that if the plaintiff prevailed, the district court would face a difficult task in ensuring that recovery "inures to the benefit of the plan as a whole" and would complicate any subsequent litigation. Id. at 261-62.

Defendants also rely on Third Circuit law and cases from other jurisdictions requiring class certification for a representative suit under Rule 23. The Third Circuit has previously stated that "[i]n light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 604 (3d Cir 2009). Likewise, numerous courts discuss or require Section 502(a)(2) litigation in the context of Rule 23. See Stanford v. Foamex L.P., 263 F.R.D. 156, 164 (E.D. Pa. 2009) (discussing Rule 23 requirements for the plaintiff's Section 502(a) claim brought in a representative capacity and ultimately certifying a class of plan participants for absent members); Moore v. Comcast Corp., 268 F.R.D. 530, 535-38 (E.D. Pa. 2010) (certifying a class and appointing class counsel for a representative Section 502(a)(2) claim); George v. Kraft Foods Global Inc., No. 08-3799, 2011 WL 5118815, at *10-11 (N.D. Ill. Oct. 25, 2011) (dismissing a Section 502(a)(2) claim brought by one individual on behalf of a plan, because permitting such an action to proceed without the protections of Rule 23 or Rule

8

23.1 would be "overly myopic"); Wagner v. Stiefel Labs., Inc., No. 12-3234, 2015 WL 4557686, at *12-13 (N.D. Ga. June 18, 2015) (granting summary judgment for the defendants on a Section 502(a)(2) claim because the plaintiffs had waived their right to sue, and even assuming a right, the plaintiffs failed to notify or otherwise involve other plan participants).

Conversely, Plaintiff relies on two district court cases which declined to follow the test set forth in Coan. Huizinga v. Genzink Steel Supply & Welding Co., No. 10-223, 2013 WL 4511291, at *8 (N.D. Ill. Aug. 23, 2013); Perez v. Bruister, 54 F. Supp. 3d 629, 650 (S.D. Miss. 2014) (adopting the analysis provided in Huizinga). In Huizinga, the plaintiff brought suit in a representative capacity against the defendant company for a breach of fiduciary duty regarding the management of an ERISA governed 401(k) Plan. Huizinga, 2013 WL 4511291, at *4-5. The court held that the plaintiff did not have to satisfy any procedural safeguards in order to bring a claim on behalf of the plan. Id. at *8. Further, the court expressly rejected the reasoning set forth Coan because it determined that the plaintiff was only seeking recovery for the plan as a whole. Id.

The Huizinga court began its analysis by noting that the Sixth Circuit had not yet ruled on the issue, but other district courts have declined to follow the Coan decision. Id. (citing Blankenship v. Chamberlain, 695 F. Supp. 2d 996, 972 (E.D. Mo. 2010); Waldron v. Dugan, No. 07-286, 2007 WL 4365358, at *6 (N.D. Ill. Dec. 13, 2007)). The court focused on the statutory language of Section 502(a)(2), reasoning that the statute only requires that a plaintiff be a plan participant in order to seek recovery for the plan as a whole. Id. The court concluded that the plaintiff satisfied both requisite elements and the statute required nothing further. Id. In rejecting the Coan reasoning, the court stated the following:

> Because of the Court's ruling limiting any recovery in this case to the time [the plaintiff] himself was a participant, individuals with claims stretching back farther

9

> than Huizinga's unquestionably remain free to bring suit to recover for any earlier losses they sustained as a result of the [defendant's] breach of fiduciary duty. Furthermore, none of the concerns from Coan are present here. There is no risk of a self-serving settlement because, in his breach of fiduciary duty claim, Huizinga seeks to recover only on behalf of the Plan as a whole. Because the Plan is still in existence, it is not likely there will be any serious problems disbursing the money back into the Plan and among its participants according to the Plan's terms. And as for the possibility of preclusion in future litigation, the preclusion doctrines themselves contain adequate safeguards—for example, the requirement of privity in some cases, and the requirement that a particular issue have been fully and fairly litigated before issue preclusion applies.

Id. Ultimately, the court determined that the plaintiff was an adequate representative of the plan and could proceed on behalf of the class. Id.

### B. Plaintiff Cannot Proceed in a Representative Capacity on Behalf of the Plan Here Because He Fails to Allege that He is an Adequate Representative of Absent Plan Participants

Regardless of whether the provisions of Federal Rule of Civil Procedure 23 are required to be applied to an action brought pursuant to Section 502(a)(2) on behalf of a plan, at the very least, the Third Circuit has noted that a litigant must make an attempt to comply with some form of the Rule 23 mandates. In considering this notion here, Plaintiff simply has failed to allege that he is an adequate representative of absent Plan participants. As the Court will note, Plaintiff has failed to take any action that would indicate that any of the precepts found in Rule 23 applies to him in his representative capacity, and for this reason he cannot proceed on behalf of the Plan.

Plaintiff cannot take action on behalf of absent members because he does not allege that he is an adequate representative of the absent Plan participants.[8] Although "it is not necessary to bring an ERISA action as a class action," a plaintiff cannot proceed to protect the interests of absent plan participants without first taking adequate steps under the circumstances to

---

[8] Plaintiff is attempting to represent not only Plan participants, but also the Plan itself. But he has filed this action against the Plan, among other Defendants. Plaintiff cannot represent the interests of the party he is suing and is seeking to recover from in the same suit.

demonstrate that he is an adequate representative.[9] Coan v. Kaufman, 457 F.3d 250, 261 (2d Cir. 2006).

In this regard, Plaintiff has failed to take steps to properly act in a representative capacity. Initially, the Complaint identifies Plaintiff as the sole party bringing this action, and does not allege that he is bringing any claims in a representative capacity. (Doc. No. 1 at ¶ 38.) Specifically, the Complaint states that Defendants "breached [their] duty to Plaintiff." (Id. at ¶¶ 46, 52, 58, 64, 70.) The Complaint does not contain any allegation that Plaintiff is seeking relief on behalf of the Plan or in a representative capacity, or that he is seeking contributions for any other Plan participant. While the Complaint states that Out of Site and the Plan failed to deposit money into Plaintiff's and "other Plan participants . . . accounts," the reference to other participants does not override the Complaint's naming of Jason Mendenhall as the sole plaintiff and that he seeks relief as an individual. (Id. at ¶¶ 33-34, 36.)

In addition, Plaintiff has not undertaken any procedural precautions to ensure the protection of other Plan participants. Based on the filings in the two years this litigation has been outstanding, Plaintiff has not made any colorable attempt to notify other Plan participants of this lawsuit, to amend the Complaint to reflect that he is proceeding in a representative capacity, or to set forth facts demonstrating that he is the proper party to represent the other Plan participants.[10]

Moreover, the instant case substantially differs from the Huizinga case on which Plaintiff relies on. 2013 WL 4511291, at *8. First, in Huizinga, the plaintiff's recovery was limited only

---

[9] (Doc. No. 69-1 at 26); Stanford v. Foamex L.P., 263 F.R.D. 156, 164 (E.D. Pa. 2009); Moore v. Comcast Corp., 268 F.R.D. 530, 535-38 (E.D. Pa. 2010); Huizinga, 2013 WL 4511291, at *8.

[10] There are very limited circumstances where a plaintiff may proceed without first taking adequate steps. Specifically, a plaintiff's duty may be discharged if "a plan participant joins or makes a good-faith effort to join other participants as parties pursuant to Rule 19 . . . ." Coan v. Kaufman, 457 F.3d 250, 261 (2d Cir. 2006).

11

to the time which the plaintiff was a part of the disputed plan. Id. Conversely, here, no time limit has been placed on Plaintiff's recovery. Rather, based on the pleadings, Plaintiff states that he is seeking a remedy for the breach of fiduciary duties individually and for all Plan participants, former and current. (Doc. No. 69 at 7.) Thus, Plaintiff is seeking much broader redress, including the adjudication of Plan participants' rights which may substantially differ from his own and result in improper claim preclusion. The facts surrounding his employment status, enrollment, disenrollment, and withdrawal of funds may differ substantially from others who are currently enrolled, disenrolled, or have remained in the Plan.

Second, there are potential issues involving a self-serving settlement and disbursement of a proper amount of funds due to the limited funds Defendants may have available in this case. In Huizinga, the risk of limited funds and issues disbursing the funds back to the plan was not a "serious issue" because the plan was still in existence. 2013 WL 4511291, at *8. While the Plan here is still in existence, unlike in Huizinga, there are potential issues regarding a self-serving settlement and fund disbursement due to limited funds. As Plaintiff concedes, "there may be limited funds with which to make payments to the Plan." (Doc. No. 69 at 5-6). This creates a high potential of precluding other individuals who have different rights from having them properly adjudicated later on. If Plaintiff recovers or takes a settlement on behalf of the Plan which uses all or even a majority of Defendants' limited funds, those with greater or different rights may not have them vindicated through subsequent litigation due to the insolvency of the Plan.

Likewise, if settlement occurs, the limited funding may not be adequate to satisfy the total amount that each Plan participant is owed. In this scenario, the Court will face the difficult task of apportioning the funds without guidance from absent Plan participants. Plaintiff would

gain a distinct advantage by being the only participant able to advocate for each parties' disbursement. This would place absent Plan participants at the mercy of Plaintiff's counsel without the ability to prevent impinging on their rights. Consequently, unlike Huizinga, the potential limited funding available creates self-serving settlement issues and a fund disbursement issue.

Accordingly, Plaintiff will not be permitted to proceed with a Section 502(a)(2) claim in his representative capacity. Plaintiff has failed to make any showing that he is the proper representative for the Plan. In addition, due to the limited funds available and the breadth of recovery sought, Plaintiff's representative capacity claim creates serious issues of claim preclusion, proper fund disbursement, and improper adjudication of absentee party rights.

## V. AMENDMENT WILL BE DENIED FOR UNDUE DELAY

In Plaintiff's Response to Defendants' Motion for Judgment on the Pleadings, Plaintiff requests that the Court grant him leave to amend his Complaint. (Doc. No. 69 at 6.) Under Federal Rule of Civil Procedure 15(a)(2), a court should freely give leave to amend when justice requires. Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990). This policy is not without limits. Id. A court may deny amendments for an "apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Bivings v. Wakefield, 316 F. App'x 177, 180 (3d Cir. 2009).

At this stage in the litigation, granting leave to amend would cause undue delay. As noted above, this case has proceeded for two and a half years. During that time, Plaintiff has not sought to amend the Complaint to reflect that he is proceeding in a representative capacity or to notify absent Plan participants. To allow Plaintiff to amend the Complaint at this point in the

13

litigation would essentially set this case back to where it began, resulting in substantial and undue delay, as well as increased cost for both parties. Rolo v. City Inv. Co., Liquidating Tr., 155 F.3d 644, 655 (3d Cir. 1998) (denying leave to amend due to the duration of the case and the substantial effort and expense in resolving an underlying motion to dismiss; and amendment would cause undue delay or prejudice defendants).

Moreover, Plaintiff has not pled or shown that he would be an adequate class representative of absent persons who may or may not be Plan participants, nor has he pled or shown how his individualized claims would by typical of the claims of absent persons. Plaintiff is a former employee and his interests are different from current employees.

Additionally, denying leave to amend will not end this litigation. Plaintiff may pursue his claims against Defendants in his individual capacity. Furthermore, any absent participants in the Plan, whether current or past members, will not be prejudiced because they can bring their own action against Defendants regarding their membership in the Plan. Therefore, Plaintiff's request to amend the Complaint to reflect that he is proceeding in a representative capacity will be denied.

## VI. CONCLUSION

For the foregoing reasons, the Court will grant the Motion[s] for Judgment on the Pleadings of Out of Site Infrastructure, Inc. (Doc. No. 66) and Out of Site Infrastructure Inc., Retirement Plan. (Doc. No. 68).